# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:12-CV-009-DCK

| | |
|---|---|
| RONALD W. McMANUS, as Trustee of the Ronald W. McManus Trust, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | ORDER |
| GMRI, INC., ) ) | |
| Defendant. ) ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant's "Motion To Dismiss Claims Pursuant to Rule 12(b)(6) Or, Alternatively, For Judgment On The Pleadings Pursuant To Rule 12(c)." (Document No. 4). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, Defendant's "Motion To Dismiss ..." will be <u>granted</u> in part, and <u>denied</u> in part.

## I. BACKGROUND

On October 13, 2011, Plaintiff Ronald W. McManus, in his capacity as Trustee of the Ronald W. McManus Family Trust, ("Plaintiff" or "Trust") filed a "Verified Complaint" (Document No. 1-1) against Defendant General Mills Restaurants, Inc., d/b/a The Olive Garden Restaurant ("Defendant" or "GMRI") in the Superior Court of Mecklenburg County, North Carolina. On January 10, 2012, Defendant timely removed the case to this Court pursuant to the federal court's diversity jurisdiction under 28 U.S.C. § 1332. (Document No. 1). On January 17, 2012, Defendant filed its "Motion to Dismiss ..." (Document No. 4) and "Defendant GMRI, Inc.'s Brief in Support of Motion to Dismiss ... ." (Document No. 5). "Plaintiff's Memorandum in Opposition to

Defendant's Motion to Dismiss ..." was filed on January 31, 2012. (Document No. 8). On February 14, 2012, Defendant responded with "Defendant GMRI, Inc.'s Reply Brief in Support of Motion to Dismiss ... ." (Document No. 13).

Plaintiff alleges that Ramona H. McManus ("Ramona McManus") entered into a lease with Atlantic Restaurant Ventures, Inc. ("Atlantic"), dated December 20, 1984 (the "Original Lease") for certain real property, including a restaurant building, located on Independence Boulevard in Charlotte, North Carolina (the "Premises"). (Document No. 1-1, ¶ 6). According to Plaintiff, in March 1988, the Original Lease was amended, and Atlantic assigned and transferred, and Defendant assumed, all rights, duties and liabilities of Atlantic under the Original Lease. (Id., ¶ 7). Plaintiff states that the Original Lease was further amended on May 19, 2003, and following Ramona McManus's death, Plaintiff became the owner of the Premises and the landlord under the Original Lease, as amended. (Id., ¶¶ 8-9). Plaintiff further claims that it remains the owner and landlord of the Premises, and that the parties entered into a Third Lease Amendment on June 30, 2009. (Id., ¶ 10). Finally, Plaintiff claims that the term of the Original Lease, as assigned and amended by the parties, (the "Lease") ended on June 30, 2011 (the "Termination Date"), and Defendant vacated the Premises in January 2011, but continued to pay rent through the Termination Date. (Id., ¶ 10-12).

Plaintiff alleges that "[f]ollowing the Termination Date, the Trustee inspected the Premises, which were found to be in deplorable condition." (Id., ¶ 13). Plaintiff's Complaint includes allegations that

> [w]alls, floors, doors, and ceilings were damaged. The kitchen was damaged and had not been maintained in good condition for some time. The roof leaked. Plumbing, mechanical and electrical systems required repairs. Property belonging to the Trust was wrongfully removed. Where property was removed, the damage caused by the removal was not repaired. Importantly, mold and mildew were found in the building which will require remediation.

Id. Based on these allegations, Plaintiff contends that Defendant violated various sections of the Lease and that, "[d]ue to [Defendant's] failure to maintain the Premises, failure to surrender the Premises in good condition, wrongful removal of Trust property from the Premises and failure to repair damage resulting from the removal of certain fixtures, [Plaintiff] has suffered damages in excess of $10,000." (Id., ¶ 17, 21, 24, 25-31).

Plaintiff includes in the Verified Complaint causes of action for breach of contract; negligence; unfair and deceptive trade practices; breach of covenant of good faith and fair dealing; breach of implied duty to use reasonable diligence; conversion; and unjust enrichment. (Document No. 1-1). In the pending motion to dismiss, Defendant does not seek dismissal of Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing (Plaintiff's "Contract Claims"), but does move to dismiss Plaintiff's "five non-contract claims," including "(1) negligence, (2) unfair and deceptive trade practices ("UDTP"), (3) breach of the implied duty to use reasonable diligence, (4) conversion, and (5) unjust enrichment." (Document No. 5, p.2). The question before the Court is whether these non-contract causes of action survive Defendant's Rule 12(b)(6) and Rule 12(c) motions to dismiss under the prevailing standard.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also, Robinson v. American

3

Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard as a motion to dismiss under Rule 12(b)(6). Deltacom, Inc. v. Budget Telecom, Inc., 2011 WL 2036676 at *2 (E.D.N.C. May 22, 2011) (citing Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009));  see also, Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002).

### III. DISCUSSION

The crux of Defendant's argument in support of its "Motion to Dismiss..." is that "Plaintiff has not alleged any conduct on the part of [Defendant] that would rise beyond a breach of contract."

4

(Document No. 5, p.4). Therefore, as noted above, Defendant moves to dismiss Plaintiff's five non-contract claims based on its argument that "each of the issues raised by Plaintiff is expressly addressed in the Lease and will be fully resolved in Plaintiff's Contract Claims." Id.

Plaintiff opposes the motion, arguing in general that it "has pled certain claims in contract law and, in the event the Court finds the Lease is not binding on GMRI, or certain acts fall outside the scope of the Lease, [Plaintiff] has pled certain claims in tort law." (Document No. 8, p.4). Plaintiff asserts that it "is allowed to plead such alternative and inconsistent claims pursuant to case law and the Federal Rules of Civil Procedure." Id. Moreover, Plaintiff asserts that its conversion claim should survive under one or more exceptions to the general rule that it is barred by the economic loss doctrine, and that the unfair and deceptive trade practices claim should survive based on Defendant's "egregious" conduct. (Document No. 8, pp.4-8). Plaintiff's response in opposition to the motion to dismiss does not specifically oppose dismissal of its claims for negligence, unjust enrichment, or breach of the implied duty to use reasonable diligence. (Document No. 8).

In reply, Defendant asserts that Plaintiff failed to actually plead in the alternative, and that "Plaintiff has not alleged any facts that would support an inference that the Lease was invalid," and that Defendant concedes that the Lease "constitutes a binding agreement between [the parties]. (Document No. 13, pp.2-3). Defendant concludes that "there are no circumstances under which the Court could find that the Lease is not binding on GMRI." Id.

The Court will analyze each claim Defendant seeks to dismiss in turn. However, before considering the claims,

> the Court will repeat the Fourth Circuit's observation in Broussard that it believed 'should guide [a] district court's consideration of [a party's] tort claims' in an action arising out of a contractual relationship:

> "We think it unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." If [a party] has failed to fulfill its contractual obligations, the remedy is contract damages, not the blank check afforded to juries when they are authorized to return a punitive award.

Deltacom, Inc., 2011 WL 2036676 at *4 (quoting Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331 (4th Cir. 1998) (quoting Strum v. Exxon, Co., U.S.A., 15 F.3d 327, 333 (4th Cir. 1994)).

## A. Negligence

Defendant first challenges Plaintiff's claim for negligence, arguing that the duties identified by Plaintiff each "arise[] from and [are] expressly addressed in the Lease ... [and] [a]ccordingly, Plaintiff's negligence claim is nothing more than a claim for negligent breach of contract." (Document No. 5, p.4). Aside from arguing that it is allowed to plead claims in the alternative, Plaintiff does not specifically challenge Defendant's "Motion to Dismiss..." as to this cause of action. (Document No. 8, pp.3-4).

As the Eastern District of North Carolina has stated, "[u]nder North Carolina law, a party may assert a negligence claim by alleging that an individual owing that party a legal duty breached that duty, proximately causing damage." Deltacom, Inc., 2011 WL 2036676, at *5 (citing Camalier v. Jeffries, 460 S.E.2d 133, 136 (N.C. 1995)). However, "a negligence claim is precluded where the parties' duties to one another are a matter of contract." Id. (citing Strum v. Exxon, Co., U.S.A., 15 F.3d 327, 332-33 (4th Cir. 1994) ("holding that a gross negligence claim is improper where the negligence 'arises out of [a party's] performance on the contract, not out of the type of distinct circumstances necessary to allege an independent tort'").

In the present case, Plaintiff contends that Defendant owed Plaintiff "a duty to exercise due care: (i) in its use of the Premises; (ii) in the inspection and repair of the Premises; and (iii) in determining which property belonged to the Trust." (Document No. 1-1, ¶ 38). In addition to alleging that these duties are specifically provided for in the Lease, Defendant notes that "[i]t is well-established ... that there is 'no cause of action for negligent breach of contract.'" (Document No. 5, p.4) (citing Berkeley Fed. Savings & Loan Assoc. v. Terra Del Sol, Inc., 433 S.E.2d 449, 457-58 (N.C. Ct. App. 1993) ("the trial court properly dismissed defendants' counterclaims grounded in negligence ... as a matter of law in view of the rule that there is no cause of action for negligent breach of contract.")). Defendant also argues that "under the economic loss rule, a 'tort action does not lie against a party to a contract who simply fails to perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is the damage to the subject matter of the contract.'" (Document No. 5, p.5) (citing Spillman v. Amer. Homes of Mocksville, Inc., 422 S.E.2d 740, 741-42 (N.C. Ct. App. 1992)).

The Court agrees with Defendant that each of the duties enumerated in Plaintiff's negligence claim arises out of the duties owed to Plaintiff under the Lease. Specifically, Plaintiff alleges that Defendant's negligence in performing its duties owed under the parties' contract caused harm to the property that is the subject of the contract. (Document No. 1-1, ¶¶ 37-40). Accordingly, Plaintiff's negligence claim does not arise "out of the type of distinct circumstances necessary to allege an independent tort." Broussard, 155 F.3d at 346-47 (citing Strum, 15 F.3d at 332-33).

Based on the foregoing, Defendant's "Motion to Dismiss..." Plaintiff's claim for negligence (Second Claim for Relief) will be granted.

**B. Unfair and Deceptive Trade Practices**

Next, Defendant moves to dismiss Plaintiff's claim for UDTP based on its argument that "none of Plaintiff's allegations go beyond a mere breach of contract." (Document No. 5, p.5). Specifically, Defendant asserts that there are "simply no allegations of any substantial aggravating circumstances" that would support a claim under the Unfair and Deceptive Trade Practices Act, N.C.Gen.Stat., 75-1.1 *et seq* ("UDTPA"). (Document No. 5, pp.5-6).

In order to establish a claim for UDTP "a plaintiff must show, '(1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff.'" Metro. Grp, Inc. at *6 (citing Compton v. Kirby, 577 S.E.2d 905, 917 (N.C. Ct. App. 2003); Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001)). A simple breach of contract does not qualify as an unfair or deceptive act; instead, a plaintiff must allege "some type of egregious or aggravating circumstances before the [UDTPA] applies." Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F.Supp.2d 664, 700 (M.D.N.C. 2011) (quoting Norman Owen Trucking, Inc. v. Morkoski, 506 S.E.2d 267, 273 (N.C. Ct. App. 1998)). The courts have found that "[a]ggravating factors include an intentional misrepresentation for the purpose of deceiving another and which has a natural tendency to injure the other." Id. (citing Baldine v. Furniture Comfort Co., 956 F. Supp. 580, 587-88 (M.D.N.C. 1996)). In order for Plaintiff's claim to survive Defendant's motion to dismiss, his "complaint must allege facts stating all the elements of the claim, which here include allegations of some type of egregious or aggravating circumstances." Id. (citing Kelley v. CitiFinancial Servs., Inc., 696 S.E.2d 775, 781-82 (N.C. Ct. App. 2010)).

In the present case, even assuming the truth of the allegations in Plaintiff's Verified Complaint, it has failed to state a *prima facie* case for unfair or deceptive trade practices.

A practice is unfair if it is unethical or unscrupulous, and it is

8

> deceptive if it has a tendency to deceive. The determination as to whether an act is unfair or deceptive is a question of law for the court … . Moreover, some type of *egregious* or *aggravating* circumstances must be alleged and proved before [UDTPA's] provisions may take effect.

Kelley, 696 S.E.2d at 781 (citing Dalton, 353 N.C. at 656-57). In order "[t]o prevail under the [UDTPA], one must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." Cameron v. Martin Marietta Corp., 729 F. Supp. 1529, 1531 (E.D.N.C. 1990) (citing Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 534 (4th Cir. 1989)).

Based on this standard, the Court finds that Plaintiff has failed to allege facts sufficient to state a claim for UDTP. In response to Defendant's motion to dismiss, Plaintiff contends that "[t]he scope and magnitude of the physical damages elevate [Defendant's] conduct to the level of 'egregious' conduct required to state a claim of unfair and deceptive trade practices." (Document No. 8, p.6). The Verified Complaint alleges that Defendant's actions "were unfair and deceptive within the meaning of the [UDTPA]," "were and are affecting commerce," and "[a]s a direct and proximate result of the [UDTP] of [Defendant], [Plaintiff] has been damaged ...." (Document No. 1-1, ¶¶ 42-44).

Plaintiff's statements in support of this cause of action are conclusory and fail to state sufficient factual content to support a claim that is facially plausible. (Document No. 1-1). Similar to the circumstances that led the Kelley court to affirm a motion to dismiss for UDTP, Plaintiff fails to allege that Defendant attempted to deceive Plaintiff or that Defendant acted unethically. See Kelley at 781-82 (finding "no indication in the complaint or supporting documents that Defendants ... attempt[ed] to deceive Plaintiff or other customers. Nor do the allegations in the complaint establish that Defendants acted unethically ..."). Moreover, as with Plaintiff's other claims, her UDTP allegations are all in the context of the alleged breach of the Lease. See (Document No. 8,

9

p.6) (citing Document No. 1-1, ¶ 25) ("In further violation of Section 9.03 of the Original Lease, GMRI caused, or allowed, the wrongful removal of certain Trust property....").

Based on the foregoing, Defendant's "Motion to Dismiss..." Plaintiff's claim for UDTP (Third Claim for Relief) will be granted.

**C. Breach of the Implied Duty to Use Reasonable Diligence**

Next, with respect to Plaintiff's claim for breach of the implied duty to use reasonable diligence, Defendant argues that the claim "fails as a matter of law because no such cause of action is recognized under North Carolina law." (Document No. 5, p.6). In its Verified Compliant, Plaintiff alleges that "[a]s a party to the Lease, [Defendant] was bound by an implied obligation to use reasonable diligence to treat the Premises in such a manner that no injury would be done to the Premises," that Defendant breached this implied obligation, and that as a result of this breach, Plaintiff "has been damaged." (Document No. 1-1, ¶¶ 51-53).

In addition to arguing that there is no such implied obligation under North Carolina law, Defendant further notes that its obligation to prevent damage to the property in question was "set forth expressly in the terms of the Lease." (Document No. 5, p.6) (citing Document No. 1-1, ¶ 15) (Section 8.01 requires [Defendant] to 'make any and all repairs required to be made ... to keep the [restaurant building] in good and presentable condition.'").

In response, Plaintiff declines to specifically oppose dismissal of this claim and fails to cite any authority supporting its proposition that Defendant was bound by an implied duty to use reasonable diligence. (Document No. 8). To the extent Plaintiff seeks to plead such a claim "in the alternative" the undersigned does not find that Plaintiff has alleged a plausible claim. (Document No. 1-1). Rather, the Verified Complaint only asserts that Defendant was bound by this purported duty "[a]s a party to the Lease." Id.

Based on the foregoing, the Court is satisfied that Defendant's obligations in this matter are defined by the contract between the parties. Accordingly, the Court declines to find that Plaintiff has stated a plausible claim for an implied duty to use reasonable diligence (Fifth Claim for Relief) and will allow dismissal of this claim.

**D. Conversion**

Next, Defendant moves to dismiss Plaintiff's claim for conversion. (Document No. 5, pp.7-8; Document No. 13, pp.3-5). In its Verified Complaint, Plaintiff alleges that Defendant "wrongfully took the Trust's property, including but not limited to electrical equipment, light fixtures and portions of the ventilation and air-conditioning equipment. . . . exercised a right of ownership over Trust's property to the exclusion of the Trust, and . . . impermissibly and without authorization retained and refused to return the Trust's property." (Document No. 1-1, ¶¶ 55-57). Plaintiff further alleges that it is "the lawful owner of the ... property and is entitled to its immediate possession." (Document No. 1-1, ¶ 58).

"In North Carolina, conversion is generally defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" ACS Partners, LLC v. Americon Group, Inc., No. 3:09-CV-464, 2010 WL 883663, at *11 (W.D.N.C. March 5, 2010) (quoting Peed v. Burleson's, Inc., 244 N.C. 437 (1956)). The Middle District of North Carolina has further provided that "the tort of conversion involves two essential elements: ownership by the plaintiff and conversion by the defendant." TSC Research, LLC v. Bayer Chemicals Corp., 552 F.Supp.2d 534, 542 (2008) (citing Lake Mary Ltd. Partnership v. Johnston, 551 S.E.2d 546, 552 (N.C. Ct. App. 2001)). Where, a party has allegedly "received the materials in question pursuant to a contract, conversion requires more than mere possession." Id. "[D]emand and refusal are

11

necessary to the existence of the tort. When demand is made, an absolute, unqualified refusal to surrender, which puts the plaintiff to the necessity of force or a lawsuit to recover his own property, is of course a conversion." Id. (citing Hoch v. Young, 305 S.E.2d 201, 203 (N.C. Ct. App. 1983) (additional citation omitted); see also, River's Edge Pharms, LLC v. Gorbec Pharm. Servs, LLC, 2012 WL 1439133 at *12 (M.D.N.C. Apr. 25, 2012).

In the present case, Plaintiff's Verified Complaint explicitly lays out the elements establishing a claim of conversion. (Document No. 1-1, ¶¶ 54-58). Specifically, Plaintiff alleges that Defendant took Plaintiff's property "[w]ithout authorization or right," exercised a right of ownership over the property to the exclusion of the Plaintiff, and "impermissibly and without authorization retained and refused to return" the property. (Document No. 1-1, ¶¶ 55-57). Plaintiff further incorporated in its allegation that it "made demand on GMRI to recover the costs to repair the Premises and replace the property GMRI wrongfully removed, but GMRI failed and refused to comply." (Document No. 1-1, ¶¶ 54, 27).

With respect to the requirement that the property at issue must belong to Plaintiff, Defendant does not appear to contest Plaintiff's allegation that Plaintiff is the rightful owner of the property. (Document No. 5, p.7-8). However, Defendant again argues that Plaintiff's claim "sounds in contract, not tort" because "[t]he parties' rights with respect to these fixtures, including their ownership upon expiration of the Lease, are expressly governed by Section 9.03 of the Lease." (Document No. 5, p.7) (citing Document No. 1-1, ¶¶ 22, 25).

Both parties recognize the general rule that "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." (Document No. 5, p.7 and Document No. 8, p.4) (quoting N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 240 S.E.2d 345, 350 (N.C. 1978)) (citations omitted); see also, Severn Peanut Co. v. Indus. Fumigant Co., 826 F.Supp.2d 871,

12

873-74, (E.D.N.C. 2011). The economic loss doctrine

> states that, ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor. N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 240 S.E.2d 345, 351 (1978). The doctrine relies on the notion, derived from freedom of contract, that "the parties to the contract either contemplated or should have contemplated these dangers in allocating the risk of loss." Palmetto Linen Serv., Inc. v. U.N.X., Inc., 205 F.3d 126, 130 (4th Cir. 2000) (applying South Carolina law). In other words, "business entities must protect their commercial interests up front through the medium of contract." Id.
> This doctrine, however, is not without limitation.

Severn, 826 F.Supp.2d at 873-74.

The parties here further acknowledge that the Ports Authority decision identifies exceptions to the economic loss rule; however, the parties disagree as to whether any of these exceptions are applicable to the instant case. (Document No. 5, pp.7-8; Document No. 8, pp.4-5; Document No. 13, pp.3-5). The question before the Court on this issue appears to be whether (1) "the injury, proximately caused by the promisor's negligent, or wilful act or omission in the performance of his contract, was to property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee," or (2) "the injury so caused was a wilful injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor." (Document No. 8, pp.4-5 and Document No. 13, p.4) (quoting Ports Authority, 294 N.C. at 82).

The undersigned is persuaded, applying either TSC Research or Ports Authority, that Plaintiff has made a sufficient claim of conversion to survive a motion to dismiss. Specifically, the Complaint alleges that Plaintiff demanded the recovery, replacement, and/or return of its property that was wrongfully removed, and that Defendant failed and refused. (Document No. 1-1, ¶ 27); see also TSC Research, 552 F.Supp.2d at 542. In addition, although this may be a factual dispute

that is further developed through discovery, it appears the property that was allegedly converted was the subject of the contract. (Document No. 1-1, ¶¶ 22, 25, 55); see also Ports Authority, 240 S.E.2d at 351. Certainly, the specific property that Plaintiff contends was wrongfully converted was explicitly addressed in the terms of the parties' contract. (Document No. 1-1, ¶¶ 22, 25).

Defendant also asserts that Plaintiff failed to allege a "willful injury," but Defendant declines to offer any explanation or authority supporting its position. (Document No. 5, p.8). The undersigned is unconvinced. Although Plaintiff did not use the precise term "willful" [or wilful], the Court is satisfied that the allegations describe a willful act. Courts in the Fourth Circuit have recently recognized the definition of willful as "conscious or deliberate." Maryland v. Universal Elections, Inc., 2012 WL 1940543 at *4 n.7 (D.Md. May 29, 2012); see also, Laing v. Federal Exp. Corp., 2011 WL 6072028 at *5 (W.D.N.C. Oct. 13, 2011) ("Willful conduct is more than negligent and must be voluntary, deliberate, or intentional."). Here, Plaintiff's Complaint adequately describes actions in the context of the conversion claim that can be construed as conscious, voluntary, intentional, or deliberate.

Based on the foregoing, the undersigned finds dismissal of the conversion claim to be premature at this stage of the litigation. Of course, the Court may reconsider this issue on a proper motion for summary judgment. Accordingly, Defendant's "Motion to Dismiss..." Plaintiff's claim for conversion (Sixth Claim for Relief) will be denied.

**E. Unjust Enrichment**

Finally, Defendant argues that "Plaintiff's unjust enrichment claim fails as a matter of law because the parties entered into a valid and enforceable contract." (Document No. 5, p.8). Again, in response to Defendant's "Motion to Dismiss..." Plaintiff declines to specifically address this claim. (Document No. 8, pp.2-8). The Court will therefore rely on Plaintiff's Verified Complaint which

contends that Defendant "has been unjustly enriched by virtue of its wrongful taking of [Plaintiff's] property ... ." (Document No. 1-1, ¶ 65).

The Court notes that under the laws of North Carolina, "a claim for unjust enrichment may not be brought in the face of an express contractual relationship between the parties." Madison River Mgt. Co. v. Business Mgt. Software Corp., 351 F. Supp. 2d 436, 446 (M.D.N.C. 2005) (citing Southeastern Shelter Corp. V. BTU, Inc., 572 S.E.2d 200, 206 (N.C. Ct. App. 2002)) (additional citation omitted). The Fourth Circuit has stated,

> The law of unjust enrichment in North Carolina proceeds from the general principle that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Booe v. Shadrick, 322 N.C. 567, 369 S.E.2d 554, 555-556 (1988) (internal quotations omitted). In order to prevail on a claim for unjust enrichment, a plaintiff must prove that (1) it conferred a benefit on the defendant, (2) the benefit was not conferred officiously or gratuitously, (3) the benefit is measurable, and (4) the defendant consciously accepted the benefit. Id. at 556. An unjust enrichment claim is **available only in the absence of an express contract** between the parties. Id.

Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd., 72 Fed. App'x 916, 920 (4th Cir. 2003) (emphasis added); see also, Fireman's Fund Ins. Co. v. Safeco Ins. Co., 3:07-CV-86, 2007 WL 4233317 (W.D.N.C. Nov. 28, 2007).

In the present case, because all of the facts pleaded by Plaintiff allege the existence and validity of a contract between the parties, Plaintiff's claim for unjust enrichment must fail as a matter of law. (Document No. 1-1, ¶¶ 60-65). The Court notes that Plaintiff's claim for unjust enrichment expressly incorporates by reference all of the allegations of the rest of the Verified Complaint, including those alleging the existence of an express contract. (Document No. 1-1, ¶¶ 60, 6-11, 16, 20, 23). Further, Defendant acknowledges the validity of this contract, stating "[Defendant] has admitted in its Answer that the 'Lease constitutes a binding agreement between [the parties].'"

15

(Document No. 13, p.3).

Based on the foregoing, it is clear to the Court that a valid and enforceable contract exists between the parties. Accordingly, Plaintiff's claim for unjust enrichment must be dismissed, and Defendant's "Motion to Dismiss..." Plaintiff's claim for unjust enrichment (Seventh Claim for Relief) will be granted.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED,** that Defendant's "Motion To Dismiss Claims Pursuant to Rule 12(b)(6) Or, Alternatively, For Judgment On The Pleadings Pursuant To Rule 12(c)" (Document No. 4) is **GRANTED** in part, as to Plaintiff's claims for negligence, unfair and deceptive trade practices, breach of the implied duty to use reasonable diligence, and unjust enrichment; and **DENIED** in part, as to Plaintiff's claim for conversion.

**SO ORDERED.**

Signed: July 3, 2012

David C. Keesler
United States Magistrate Judge